## CONNECTICUT STATE EMPLOYEES ASSOCIATION

v.

## JUDICIAL DEPARTMENT, STATE OF CONNECTICUT; John Speziale, Chief Court Administrator of the State of Connecticut.

### Civ. No. H–80–522.

United States District Court, D. Connecticut.

Jan. 20, 1982.

Robert J. Krzys, Harry M. Franklin, Hartford, Conn., for plaintiff.

Barney Lapp, Paul M. Shapiro, Asst. Attys. Gen., Carl R. Ajello, Atty. Gen., Hartford, Conn., for defendant.

## RULING ON MOTION TO DISMISS AND MOTION TO INTERVENE

CLARIE, Chief Judge.

The plaintiff, a labor union, has brought this suit seeking declaratory and injunctive relief against the enforcement of a regulation promulgated by the defendants which restricts the political activities of employees of the Judicial Department of the State of Connecticut. The defendants, the Judicial Department and Chief Justice John Speziale who was sued in his official capacity as the Chief Court Administrator of the State of Connecticut, have moved to dismiss on the grounds that the plaintiff union lacks standing to bring this suit.

Elizabeth Schaffer, a Judicial Department employee and a member of the plaintiff union, seeks to intervene as a party plaintiff. The defendants oppose interven-

tion arguing that the intervenor, too, lacks standing to prosecute this action.

The Court finds that both the union as well as the intervenor have standing in this case and accordingly denies the defendants' Motion to Dismiss and grants the Motion to Intervene.

### Facts

This case arose out of a collective bargaining dispute between the Connecticut State Employees Association ("CSEA") and the defendants. In the course of negotiating for a successor collective bargaining agreement for the Judicial Non-professional bargaining unit,[1] the plaintiff union demanded the removal of a regulation which restricted the political activities of Judicial Department employees. The regulation provided:

> "Political Activity. No person who holds a salaried position in the Judicial Department, other than a Probate Court, shall participate in any manner in any political

---

1. The American Federation of Teachers has become the bargaining agent for Judicial Department employees and, by stipulation of the parties, has replaced CSEA as the plaintiff in this case.

2. The statute provides in pertinent part:
   "§ 5–266a. *Political activities of classified state employees. Leave of absence to accept elective office*
   (a) No person employed in the classified state service may (1) use his official authority or influence for the purpose of interfering with or affecting the result of an election or a nomination for office; (2) directly or indirectly coerce, attempt to coerce, command or advise a state or local officer or employee to pay, lend or contribute anything of value to a party, committee, organization, agency or person for political purposes.
   (b) A person employed in said classified service retains the right to vote as he chooses and to express his opinions on political subjects and candidates and shall be free to participate actively in political management and campaigns. Such activity may include but shall not be limited to, membership and holding of office in a political party, organization or club, campaigning for a candidate in a partisan election by making speeches, writing on behalf of the candidate or soliciting votes in support of or in opposition to a candidate and making contributions of time and money to political parties, committees or other agencies engaged in political action,

activity on behalf of any political party or candidate for election other than to cast his vote in an election and express his opinion as a citizen with relation to any political issue before the electorate. Nothing in this regulation shall prevent any such person from accepting a position by election or appointment without any political activity on his part, provided, however, that he shall first, upon proper application obtain permission to do so from a committee consisting of the Chief Court Administrator and three other judges designated by him on an ad hoc basis to decide such application, which shall be satisfied that such activity or office will not be incompatible with the duties of his court position, and not otherwise interfere with his conduct thereof."

In place of the regulation, the plaintiff recommended that the defendants adopt the restrictions on political activity of classified state employees as codified at Conn.Gen. Stat. §§ 5–266a and 266b.[2] The defendants

---

except that no classified employee shall engage in such activity while on duty or within any period of time during which such employee is expected to perform services for which he receives compensation from the state, and no such employee shall utilize state funds, supplies, vehicles, or facilities to secure support for or oppose any candidate, party, or issue in a political partisan election. Notwithstanding the provisions of this subsection, any person employed in the classified state service may be a candidate for a municipal office only, in any political partisan election except where prohibited by local charter or ordinance. No person seeking or holding municipal office in accordance with the provisions of this subsection shall engage in political activity or in the performance of the duties of such office while on state duty or within any period of time during which such person is expected to perform services for which such person receives compensation from the state. The state ethics commission shall establish by regulation definitions of conflict of interest which shall preclude persons in the classified state service from holding elective office.
   (c) Any person employed in state service who leaves such service to accept a full-time elective municipal office shall be granted a personal leave of absence without pay from his state employment for not more than two consecutive terms of such office or for a period of four years, whichever is shorter.

refused to modify the regulation in any manner.[3]

Accordingly, the plaintiff commenced this action on August 27, 1980 seeking an injunction barring the Judicial Department and the Chief Court Administrator from enforcing the regulation. In addition, the plaintiff seeks a declaratory judgment that the regulation violates both the federal and state constitutions. Specifically, the plaintiff claims that the regulation violates the freedom of speech and freedom of association provisions of the First Amendment of the United States Constitution; that the regulation did not result from the deliberation of a democratically elected body of representatives nor from a legislatively approved method of promulgation such as that contained in Connecticut's Uniform Administrative Procedure Act and therefore violates the Due Process Clause of the Fourteenth Amendment of the United States Constitution; and that the regulation violates the Equal Protection Clause of the Fourteenth Amendment by subjecting Judicial Department employees to more restrictive regulations than classified state employees. The plaintiff also claims violations of the First, Fourth and Fourteenth sections of the First Article of the Constitution of the State of Connecticut.

On October 23, 1980, the defendants moved to dismiss this suit arguing that the plaintiff union lacked standing to challenge the regulation. The plaintiff did not respond to the Motion to Dismiss until March 4, 1981, at which time the attorney for the plaintiff union also filed a Motion to Intervene on behalf of Elizabeth Schaffer. Intervenor Schaffer maintains that she applied for an appointment to the Zoning and Planning Commission of Montville, Connecticut and inquired of the Office of the Chief Court Administrator if holding such a position was prohibited by the regulation. The intervenor was told that she would have to submit a petition to the Department's ad hoc committee before she could be appointed to the municipal position and was further informed that a decision by the committee would not be forthcoming until after the decision deadline of the municipal appointing body. Accordingly, intervenor Schaffer withdrew her application. The defendants oppose the Motion to Intervene contending that intervenor, like the plaintiff union, lacks standing to challenge the regulation.

## Discussion of the Law

The central issue raised by both the Motion to Dismiss as well as the Motion to Intervene is whether CSEA as well as the intervenor have standing to bring this action. The defendants argue that in order for an organization to have standing to bring suit on behalf of its members, the members of the organization must have standing to sue on their own behalf. *Hunt*

---

Upon reapplication for his original position at the expiration of such term or terms of office, such person shall be reinstated in his most recent state position or a similar position with equivalent pay or to a vacancy in any other position such person is qualified to fill. If no such positions are available, such person's name shall be placed on all reemployment lists for classes in which he has attained permanent status. Such person shall give notice in writing to his appointing authority that he is a candidate for a full-time elective municipal office within thirty days after nomination for that office.

§ 5-266b. *Permitted activity*

Nothing contained in §§ 5-266a to 5-266d, inclusive, prohibits political activity by such persons in the classified service in connection with (1) an election and the campaign preceding such election if none of the candidates is to be elected at that election as represent-

ing a party any of whose candidates for presidential elector received votes in the last-preceding election at which presidential electors were selected; or (2) a question which is not specifically identified with a national or state political party. For the purposes of this section, questions relating to constitutional amendments, referendums, approval of municipal ordinances, and others of a similar character, are deemed not specifically identified with a national or state political party."

3. In the course of collective bargaining negotiations, CSEA and the Judicial Department submitted the regulation to Factfinder William Post who issued a finding that "some revision in the sweeping nature of the current regulation seems to be called for." This recommendation did not alter the defendants' opposition to modifying the regulation.

*v. Washington State Apple Advertising Commission*, 432 U.S. 333, 343, 97 S.Ct. 2434, 2441, 53 L.Ed.2d 383 (1977). The defendants maintain that CSEA cannot meet this requirement because none of the members of the union would have standing to challenge the Judicial Department regulation. Specifically, the defendants note that the complaint contains no allegation that any member of the plaintiff organization has suffered any specific injury due to the challenged regulation. The defendants argue further that intervenor Schaffer's allegations similarly fail to establish standing in that she voluntarily withdrew her application to the zoning board and cannot therefore claim to have been injured by the regulation.

▮ It is well established that in order to challenge a governmental action in federal court, a plaintiff must show that he has been "injured in fact." *Sierra Club v. Morton*, 405 U.S. 727, 734–35, 92 S.Ct. 1361, 1365–66, 31 L.Ed.2d 636 (1972). "In essence the question of standing is whether the litigant is entitled to have the court decide the merits of the dispute or of particular issues. This inquiry involves both constitutional limitations on federal court jurisdiction and prudential limitations on its exercise." *Warth v. Seldin*, 442 U.S. 490, 498, 95 S.Ct. 2197, 2205, 45 L.Ed.2d 343 (1975). It is equally true, however, that the injury suffered need not be substantial. A trifle is sufficient for standing. *United States v. Students Challenging Regulatory Agency Procedures*, 412 U.S. 669, 689 n.14, 93 S.Ct. 2405, 2417 n.14, 37 L.Ed.2d 254 (1973).

▮ The defendants correctly identify *United Public Workers v. Mitchell*, 330 U.S. 75, 67 S.Ct. 556, 91 L.Ed. 754 (1947), as the leading case on the standing of governmental employees to challenge the constitutionality of bans on political activity. In that case, the Court held that all of the members of the plaintiff union who were employees of the federal government, save one, lacked standing to challenge provisions of the Hatch Act which prohibited them from participating in political campaigns. The Court noted that:

"the facts of their personal interest in their civil rights, of the general threat of possible interference with those rights by the Civil Service Commission under its rules, if specified things are done by appellants, does not make a justiciable case of controversy. Appellants want to engage in 'political management and political campaigns,' to persuade others to follow appellants' views by discussion, speeches, articles and other acts reasonably designed to secure the selection of appellants' political choices. Such generality of objection is really an attack on the political expediency of the Hatch Act, not the presentation of legal issues. It is beyond the competence of courts to render such a decision." *Id.* at 89, 67 S.Ct. at 564.

The only individual found by the Court to have standing in *Mitchell* was an employee whom the Civil Service Commission had charged with political activity and whose removal had been recommended by the Commission. *Id.* at 92, 67 S.Ct. at 565. With respect to the claim of this employee, the Court observed that:

"This proceeding so limited meets the requirements of defined rights and a definite threat to interfere with a possessor of the menaced rights by a penalty for an act done in violation of the claimed restraint." *Id.*

While *Mitchell* appears at first blush to be dispositive of the issue of standing in the present case, a closer analysis of the facts of the two cases reveals one important difference. The employees who were found to lack standing in *Mitchell* were challenging a statutory scheme adopted by Congress. As noted above, the Court found that with the exception of the claim of one plaintiff, the case amounted to an attack on the political expediency of the Hatch Act. By contrast, the present case involves a challenge to a *regulation* adopted by the Judicial Department. The plaintiffs do not challenge the expediency of a political action undertaken by the legislature, but rather whether the

regulation has been adopted pursuant to proper procedures and whether the Judicial Department has the constitutional authority to promulgate the regulation. These are concrete legal issues, not abstract questions of political theory.

In order to understand fully the injury suffered by members of the plaintiff union, it is necessary to refer to the history of bans on political activity by state employees in Connecticut. The Judicial Department regulation is a descendant of the Merit Act, which established a merit system for state employees and became effective on May 12, 1937. Conn.Gen.Stat.Supp. §§ 422d *et seq.* (1937). The act required that all appointments and promotions in positions of state service be made only according to merit and fitness which was to be ascertained by competitive exams. The act also contained a provision with language similar to that used in the Judicial Department regulation which barred classified employees from engaging in political activities. § 481d.[4] The legislature expressly exempted employees of the judicial and legislative departments from the provisions of the act. § 424d(a) and (b).[5] The Judicial Department regulation thus represents a departure from the statutory scheme adopted by the legislature in 1937. The injury suffered by all employees of the Judicial Department consists of being denied the right to participate in political activities that they had enjoyed prior to the promulgation of the regulation.

The facts of the present case are similar to those in *Joseph v. United States Civil Service Commission,* 554 F.2d 1140 (D.C.Cir. 1977), where the court held that employees of the federal government had standing to challenge a regulation of the Civil Service Commission which exempted participation in political campaigns of independent candidates in elections for local office in the District of Columbia from the otherwise applicable prohibitions of the Hatch Act. In reaching its decision, the *Joseph* court noted that the regulation of the Commission "embodied both a decision to exempt participation in the campaigns of independent candidates and a decision not to exempt participation in partisan campaigns." *Id.* at 1146. With respect to standing, the court observed that "[t]he considered and deliberate decision of the Commission to refuse to exempt the appellants from the prohibitions of the Hatch Act is sufficient injury to meet the requirements for standing." *Id.*

The injury to employees of the Judicial Department in this case is more direct where the employees have not been denied a privilege extended to others but rather have been prohibited from activities they were previously able to pursue. Accordingly, the Court finds that all of the employees of the Judicial Department have suffered an injury sufficient to confer standing upon CSEA and intervenor Schaffer to maintain this suit. The Court therefore denies the Motion to Dismiss, and, finding no undue delay or prejudice, grants the Motion to Intervene.

SO ORDERED.

---

4. The 1937 version of the act provided:

"Sec. 481d. *Political activities.* No person employed in the classified service shall participate in any manner in any political activity on behalf of any political party or candidate for election other than to cast his vote in any election and express his opinion as a citizen with relation to any political issue before the electorate. Any violation of this section by a person in the classified service shall be adequate reason for dismissal."

5. This exemption continues to the present day and is embodied in Conn.Gen.Stat. § 5–198.